## CONDUCT JUSTIFYING DISBARMENT.

Common Pleas Court of Richland County.

IN THE MATTER OF THE COMPLAINT AGAINST LOUIS C. MENGERT.*

Decided, September Term, 1908.

*Attorney and Client—Honesty and Truthfulness Indispensable on the Part of the Attorney—Misconduct which Involves Moral Turpitude.*

An order of permanent disbarment is warranted, where the proof satisfies the court of the truth of charges of misconduct involving moral turpitude in failing to account for money collected for clients or proceeds from sales passing through his hands, or in borrowing from and failing to repay to a client money which he knew belonged to a trust fund.

SEWARD, J.

In the administration of the law in all civilized communities, the relation of attorney and client necessarily exists. The very relation demands such character in an attorney for honest and fair dealing, and for truthfulness in statements made to client or to the court, of which the lawyer is an officer, as will elevate him to a plane which is far above suspicion. He occupies a confidential relation to his client, which calls upon him, in a peculiar and high degree, for honesty of purpose in matters confided to

---

* The judgment in this case was modified by the Circuit Court by reducing the terms of suspension to three years.

him by his client. The client goes to him because he is in trouble; his rights, at least as he thinks, are about to be jeopardized. In and of himself he is helpless. He seeks a lawyer— an officer of the court. He must, he does, have confidence in his integrity; he may know little of his legal attainments, but he must believe in his unblemished and unflinching integrity; and in using the word "he," I use it in its generic sense, intending to include more especially women.

The requisites for admission to the practice of law are, knowledge of the law, and good character. I am impressed that too little importance is paid to the latter. The very definition of the word "law," imposes a duty upon him who attempts to administer it, whether attorney or court, which demands unswerving honesty and truthfulness to client and court.

"Law" is defined as a rule of human conduct prescribed by the supreme power in a state, commanding what is right, and prohibiting what is wrong. So it is the duty of the lawyer to command what is right, and prohibit what is wrong. He is engaged in his profession in a holy and righteous calling, of enforcing the right and prohibiting the wrong, and he can, and will, do neither unless he himself is possessed of sterling integrity.

His relation to the public, as an officer of the court, gives the public a right to demand that he shall be honest. The public has a right to demand, and it is the court's duty to enforce, honesty. A dishonest lawyer is as much out of place in a court of law as the devil would be in preaching the gospel of righteousness.

With these preliminary statements, we will proceed to an examination of the questions submitted to the court, and they are most important and demand the most solemn and careful consideration by the court, and we approach them impressed with the gravity of the matters involved.

On one side of the scale are the rights of clients; on the other, the lawyer's profession and means of livelihood.

We reserved for consideration a demurrer to the second specification of the second charge, and to the fifth specification of the first charge. The second charge is, unprofessional conduct, involving moral turpitude. The second specification has

reference to Mengert's action as administrator of James Pearce's estate. The gravamen of the specification is, that Carpenter presented to Mengert a claim against the Pearce estate; that he accepted the claim; that he never paid the claim, nor any part of it, although he had funds with which to pay.

Under the law, as we construe it, it is not the duty of an administrator to pay out money in his hands as such until a final account has been filed, and an order of distribution has been made by the court. It does not appear in the specification that a final account has been filed, or required to be filed. It appears that Mengert was appointed in 1895. It is the duty of the court to order a final account to be filed. Why it has not so ordered we are not able to conceive. The demurrer may be sustained, and exceptions.

The demurrer to the McReady specification, being the fifth under the first charge, we think should be overruled.

Now, as to the first charge, that is: Misconduct in office as an attorney.

First specification—Stevens matter:

The Stevens boys employed Mengert in 1907, probably in July, to collect a claim against one Ritter, consisting of a check for $65.50, and two accounts for $32.40 each.

These claims were collected promptly by Mengert, according to his own statement, July, August or September; we think probably in July, and we think *he* should have been able to fix the date. He claimed to these boys on one occasion that he mailed them a certificate, which we are satisfied he never did, and that he knew that he never did; that his statement, so made to them, was knowingly false, and that his statement on the stand in relation to that feature of the case was knowingly false. His claim is, that he mailed either a certificate of deposit or check to the wrong office; that is, that he mismailed it; that t was afterwards returned to him. He says that if it was a check, he tore it up; that if it was a certificate, it was in such shape that he could use it. If it was a check, he might use it. If a certificate, to be valuable to the Stevens boys, it would be payable to them as payees, or made payable to them by endorsement. We are satisfied he did no such thing. If his claim, however, be true, how does his conduct in destroying the one, or

.using the other, comport with such honesty as is required of a lawyer?

Second specification.   W. W. Stewart—Bucyrus matter:

. This specification, in brief, charges that in June, 1908 (we think it should be on May 5 or 6, 1908), W. W. Stewart employed Mengert to collect a note for $225 from the maker, Albright, of Bucyrus, for a fee of $10 and $3—his expenses. That Mengert collected the amount and failed to account for more than $140—probably should be $145.

The facts disclosed are, that Mengert went over to Bucyrus on or about May 8, 1908; that Albright turned over to him, by endorsement, on that day, a certificate of deposit on the First National Bank of Bucyrus.   This certificate bears the endorsement of Mengert; bears the stamp of the bank, where deposited by Mengert, of "paid"; on the same day, the bank which issued it stamps it "paid."   He left the note with the bank for Albright to pay the balance, and which he had promised to pay the following Saturday.

We are abundantly satisfied that Mengert secured this money on this certificate, on May 8.   He credited the certificate on the note, as of that date; says he did not receive the money on the certificate and so informed his client.   When asked to give a reason for leaving the certificate with the bank, he, as a lawyer, confronts the court with the astounding proposition as to why he did not collect the money that, if the balance was not paid, he proposed to sue in common pleas court for the full amount, so as to avoid going before a justice.   But, how would such an act comport with honesty?   Albright had turned over the certificate, believing it was to be applied on his indebtedness.   How could an attorney himself verify a petition for the full amount, or permit his client to do so, when $200 had really been credited on the note?

Stewart was demanding his money, and was informed that it had not been paid.   Hahn and Stewart called up the bank and were informed that it had been paid.   They confronted Mengert; he still insisted that it had not been paid.

Third specification—Ora B. Hale matter:

This has reference to a transaction for the sale of a farm, in

which it is claimed that certain money went into the hands of Mengert, and that he failed to account for it.

It is quite evident that at least $1,000 and probably $2,000, went into the hands of Mengert, $1,000 at least, in May, 1905. After receiving this $1,000, he called upon Mrs. Hale, and paid her $700, saying to her that that was all he had received. She called upon Mr. Davis, the attorney of the loan association, who furnished the money. She, with Davis, the next day, confronted Mengert with a statement indicating that $2,000 went into his hands. Mrs. Hale says, that Davis asked him if he had not received this money, and he said, he had. It is admitted that, in addition to the $700, Mengert paid $250 and $300, and other small payments. Mengert claims a large amount of fees since 1898 against Mrs. Hale. He never charged her with any fees, or credited her with any cash and says he kept no books. He misrepresented, to put it mildly, to his client the amount of money he received, and also failed to account to her for it.

Fourth specification—A. M. Stewart v. Teeters, to recover damages in a horse deal:

A. M. Stewart purchased a horse, January 20, 1906, and claimed that there was a breach of warranty; he says he saw Mengert from forty to sixty days after that, and placed the matter in his hands as attorney. Suit was brought by Mengert against Teeters shortly after and Mengert settled the case January 26, 1907. At that time, $10 was paid him and the balance of $40 was paid, June 21, 1907. On the appearance docket appears the entry; "Settled in full by payment by defendant of $50 and costs, June 21, 1907. Douglass & Mengert, Attorneys for Plaintiff."

Stewart says, that in the latter part of the summer, Mengert kept putting him off; said he could not get it to trial. He talked to Teeters and learned that the case had been settled in the latter part of July, 1908, in a talk with Teeters.

Mengert, in attempting to explain the entry on the appearance docket, says: That he took Teeters' note, and the note had not been paid. We are forced to the conclusion that this is not true; that he received $10 on the settlement, January 26, 1907, and the balance of $40, June 21, 1907. He must have known that his claim that the case was settled by note was un-

true. He gave his receipt to Teeters for $10, on January 26, 1907, and one for $40, dated June 21, 1907.

The next charge concerns the Demetree George transaction:

George was a Macedonian; had a power of attorney to collect a claim of $500 against the Metropolitan Insurance Co. He employed Mengert to collect the claim. George was also an executor of one of his countrymen and he employed Mengert to look after, and collect this claim. They were collected in June or July, 1907; the funds in both cases. $100 of the $260, was left with a bank, and certificate taken and left with Mengert in the safe. He loaned Mengert $200 out of the $500. Afterwards, Mengert came down to borrow more money and George says he told Mengert he had no money but the trust money.

A week after Mengert came down again and George told him he had no money; Mengert then mentioned the certificate, borrowed that money and gave him a check on the bank, which was not paid for want of funds.

In *In re Kirk*, 10 S. D., 322 (73 N. W. Rep., 92; 39 L. R. A., 856), the court say, that every thing done contrary to justice, honesty or good morals, is done with turpitude.

We think the borrowing of this money under such circumstances from his client, knowing it to be trust funds, and the subsequent acts of Mengert regarding it, was misconduct, involving moral turpitude.

So that we are unanimously of the opinion that the charges contained in the first five specifications under charge 1, have been abundantly sustained by the evidence; and also the first specification of the second charge.

It is essential that the source from which justice and righteousness is expected to flow should be kept pure and free from contamination or contaminating influences, this is essential in order to maintain the dignity of, and respect for the courts.

When the communities lose respect for the courts we are hard by the foundations of anarchy. The legal profession must purge itself of dishonest lawyers.

It is therefore ordered by the court that said Louis C. Mengert be removed from the office of attorney, and that he be not permitted to practice in the courts of Ohio.

Exceptions are noted.